NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

THOMAS SCOTT HENRY,

                Plaintiff,

v.                                            Case No. 6:14-cv-237-Orl-18KRS

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by

Plaintiff Thomas Scott Henry seeking review of the final decision of the Commissioner of Social

Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy

of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 14, and the

parties' Joint Memorandum,[1] Doc. No. 21.

## PROCEDURAL HISTORY.

In 2009, Henry filed applications for benefits under the Federal Old Age, Survivors and

Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 15.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order.  *Id.* at 4.

Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act").   He alleged that he became disabled on March 3, 2006.   R. 283, 285.

After his applications were denied originally and on reconsideration, Henry asked for a hearing before an Administrative Law Judge ("ALJ").   R. 145-46.   An ALJ held a hearing on May 10, 2011, and September 27, 2011.   Henry, who was unrepresented, testified at the first hearing.   Henry was represented by counsel at the second hearing.   Henry and a vocational expert ("VE") testified at the second hearing.   R. 28-79.

After considering the hearing testimony and the evidence in the record, the ALJ found that Henry was not disabled.   R. 108-116.   Henry sought review of this decision by the Appeals Council.   The Appeals Council granted the request for review, vacated the ALJ's decision and remanded the case for resolution of a number of issues.   R. 122-24.

Following remand, the ALJ held another hearing on November 1, 2012.   Henry, represented by counsel, and a VE testified.   R. 80-100.   After consideration of the testimony and the records, the ALJ found that Henry was insured under OASDI through September 30, 2012. Henry had not engaged in substantial gainful activity since the alleged disability onset date. R. 15.

The ALJ concluded that Henry suffered from depression, degenerative disc disease and arthritis, which were severe impairments.   These impairments, singly and in combination, did not meet or equal a listed impairment.   *Id.*

The ALJ determined that Henry had the residual functional capacity ("RFC") to do light work with the following exceptions:

> [T]he claimant can only occasionally climb, balance, kneel, crouch
> and/or crawl.   He must avoid concentrated exposure to hazards such
> as machinery and heights.   The claimant is limited to simple,
> routine, repetitive tasks involving up to 3-step commands.   He can
> tolerate only occasional changes in the work setting, judgment or
> decision-making.   Additionally, the claimant cannot do fine detail
> work.   He can have only occasional interaction with the general
> public and coworkers.

R. 17.   In reaching this determination, the ALJ gave limited weight to the opinion of Alvan

Barber, M.D., a consultative examining physician.   R. 18.   The ALJ also gave limited weight to

the opinion of P.S. Krishnamurthy, M.D., a reviewing physician, because the ALJ concluded that

Henry had additional limitations not identified by Dr. Krishnamurthy.   R. 20.   The ALJ also

found that Henry's reports of limitations from pain and other subjective symptoms were not fully

credible.   R. 18.

The ALJ determined that Henry could not perform any of his past relevant work.   R. 20.

After considering the testimony of the VEs, the ALJ concluded that Henry could perform the

unskilled, light exertion jobs of route clerk, collator operator and blade balancer, each of which

existed in the national economy.   R. 21.   Therefore, the ALJ concluded that Henry was not

disabled.   R. 21-22.

Henry sought review of the ALJ's decision by the Appeals Council.   R. 8.   On December

12, 2013, the Appeals Council found no reason to review the ALJ's decision.   R. 1-3.

Henry now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Henry having exhausted his administrative remedies, the Court has jurisdiction to review

the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42

U.S.C. § 1383(c)(3).   A court's review of a final decision by the SSA is limited to determining

whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal

standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the

parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by

reference.   Accordingly, I will only summarize facts pertinent to the issues raised to protect

Henry's privacy to the extent possible.

Henry was born in 1960.   R. 36.   He completed school through the eleventh grade.

R. 37.

At the ALJ's first hearing, Henry testified that he could read, write and drive.   *Id.*   He

previously worked as an automotive mechanic, in ground and building maintenance, as a truck

driver and as a painter.   R. 38-39.

Henry testified that he suffered from degenerative disc disease and arthritis.   R. 61.   He

experienced daily, sharp pain from the middle of his back radiating down his right leg which was

exacerbated by walking, standing and sitting.   Sometimes the pain extended up into his neck and

shoulders.   R. 72.   At the third hearing before the ALJ, Henry testified that he had not had

treatment after the second ALJ hearing except through a free clinic.   R. 85.

At the second hearing, Henry testified he was taking Naproxen, Flexeril and

acetaminophen.   R. 61.   Flexeril made him drowsy.   R. 72-73.   The free clinic would not

prescribe certain types of medication.   R. 63.   His doctors told him that surgery was not an

option.   *Id.*   He had undergone chiropractic treatment, but he had to discontinue that treatment

because he could not afford it.   R. 64.

At the third hearing, Henry testified that he could sit for 10 to 15 minutes before needing

to change position due to back pain.   He had begun using a cane 3 to 4 weeks before the ALJ's

third hearing.   R. 90.   Pain medication made his condition tolerable.   R. 92.   Henry testified

that he could lift a gallon of milk.   He could walk 330 feet down his driveway before having to

stop to rest.   *Id.*   He had difficulty with grasping objects and fine manipulation in his right hand

due to damage from burns suffered years earlier.   R. 92-93.

At the third ALJ hearing, Henry also testified that his vision had gotten progressively

worse over the previous two years.   R. 87-88.   He had been diagnosed with cataracts, leaving

him 100% blind in his right eye and with little sight in his left eye.   He could no longer drive or

read.   *Id.*   He was scheduled to have surgery on his right eye on November 13, 2012.   His

mother was paying for the surgery.   R. 88-89.

The medical records reflect that, on August 23, 2008, Maria R. Gonzalez, M.D., examined

Henry at the request of the state disability agency.   Dr. Gonzalez's report reflects that Henry had

not seen a physician for 18 years due to loss of his medical insurance.   Henry complained of pain

throughout his spine radiating to his leg.   He reported that he could walk or sit for about 1 hour

each.   He could stand for 1 hour at a time for a total of 3 to 4 hours a day.   He could lift 5

pounds, and drive a car for 2 hours.   He could climb stairs, but he could not do many household

chores.   R. 381.   Dr. Gonzalez observed that Henry's ambulation was normal.   Henry's visual

acuity was 20/20 in the right and left eyes.   R. 382.   X-rays showed bone spurring on the

lumbosacral spine consistent with moderate degenerative joint disease.   *Id.*

NOT FOR PUBLICATION

In 2008 and 2009, Henry was treated by chiropractors.   R. 385-86, 388-93.   Throughout 2009, Steven Bessette, D.C., observed palpable spasms, fixations and restricted range of motion in the thoracic and lumbar spine.   R. 388-93.   In December 2009, Dr. Bessette observed that lower back pain was radiating into Henry's hips.   R. 393.

On February 16, 2010, Dr. Barber examined Henry at the request of the state disability agency.   Henry complained of lower back pain, difficulty bending, walking and standing for long, and sitting more than 30 minutes.   Henry estimated that he could walk 30 minutes, stand 1 hour, sit 30 to 45 minutes and lift approximately 10 to 15 pounds.   He drove himself to the examination.   R. 395.   He was taking Aleve and potassium for pain.   R. 396.   Upon examination, Dr. Barber found 5/5 muscle strength in the lower extremities.   A straight-leg raising test was positive for pain bilaterally.   Dr. Barber observed positive paravertebral muscle spasms and point tenderness in the right and left SI joints.   Range of motion was limited in the lumbar spine.   R. 398, 400.   Henry was able to walk without difficulty.   R. 398.   His visual acuity was 20/160 on the right and 20/40 on the left.   R. 396.   Dr. Barber's assessment was lumbar degenerative disc disease with low back pain.   He opined that Henry could walk and stand for reasonable periods of time.   He could not sit for long periods of time.   R. 399.

On May 14, 2010, Dr. Krishnamurthy prepared a physical functional capacity assessment after review of Henry's records.   Dr. Krishnamurthy opined that Henry could lift up to 20 pounds occasionally and 10 pounds frequently.   He could sit, stand or walk about 6 hours in an 8-hour workday.   Henry could only occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl.   R. 411-18.

NOT FOR PUBLICATION

On June 21, 2010, Henry was examined at Florida Orthopedic Associates, P.A.   Counsel agree that Stephane Lavoie, M.D., examined Henry.   Doc. No. 21 at 11.   Examination revealed that Henry had a slow antalgic gait and he held his trunk slightly shifted to the right.   Henry had pain with minimal range of motion confirmed with straight-leg raising.   He had full strength in his lower extremities.   X-rays revealed significant spondylosis of the lumbar spine.   Dr. Lavoie's assessment was chronic back pain and lumbar spondylosis with no surgical solution.   R. 419. He referred Henry to physical therapy.   R. 421-31.

Beginning in October 2010, Henry was treated at the Community Primary Health Clinic for chronic pain syndrome among other complaints.   R. 439.   An MRI taken at Florida Hospital on October 28, 2010, revealed moderate multilevel degenerative changes of the lumbar spine. R. 453.   An X-ray taken the same date revealed moderate degenerative changes of the mid to lower dorsal spine.   R. 456.

A right lower lumbar spasm was observed upon examination in February 2011.   R. 437. Flexeril was prescribed in March 2011.   The treatment note indicates that Henry had also been prescribed Percocet by another source.   R. 436.   In July 2011, an MRI of the lumbar spine confirmed multilevel degenerative disc disease with marginal osteophytes and facet joint arthropathy.   The radiologist suspected impingement of the right L4 nerve root.   R. 470.

In September 2011, the treatment provider at the Primary Health Clinic added Tramadol to Henry's medications.   R. 494.   Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain.   *Tramadol*, Drugs.com, http://www.drugs.com/tramadol.html (last visited Dec. 29, 2014).

NOT FOR PUBLICATION

On October 30, 2012, Henry was examined at the Filutowski Cataract & Lasik Institute.

His visual acuity had decreased to 20/200 in the right eye and 20/40 in the left eye due to

cataracts.   R. 504-05.   Surgery was recommended first on the right eye and later on the left eye.

R. 508.

At the first hearing, the ALJ asked the VE to assume a hypothetical person of Henry's age,

education and work experience who could perform light work with postural restrictions of only

occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.   R. 51.   The VE

testified that the person could not perform any of Henry's past relevant work.   The person could

perform the light, unskilled jobs of route clerk, collator operator and blade balancer, each of

which was available in the national economy.   R. 52.

At the second hearing, the ALJ asked the VE to assume a hypothetical person of Henry's

age, education and work experience who could perform light work with the following limitations:

> Occasionally climb, balance, stoop, kneel, crouch, and crawl.   This
> person needs to avoid concentrated exposure to hazards such as
> machinery and heights.   This person is limited to simple, routine,
> repetitive tasks with up to three step commands with occasional
> changes in the work setting, judgment, or decision-making [*sic*].

R. 77.   The VE testified that this person could not perform any of Henry's past relevant work.

*Id.*   This person could perform the light unskilled jobs of ticket taker, ticket seller and

housekeeping/cleaner, each of which was available in the national economy.   R. 78.

At the third hearing, the ALJ asked the VE to assume a hypothetical person of Henry's

age, education and work experience who could do the following:

> [C]apable of light work with the following additional restrictions,
> occasionally climb, balance, stoop, kneel, crouch and crawl.   This
> person should avoid concentrated exposure to hazards such as
> machinery and heights.   This person would be limited to simple,

> routine, repetitive tasks with up to three-step commands with occasional changes in the work setting, occasional judgment or decision-making and occasional interaction with the general public and co-workers.

R. 96.   The VE testified that this person could not perform Henry's past relevant work.   *Id.*   The VE opined that this person could perform unskilled jobs requiring a light level of exertion, specifically routing clerk, marker and house sitter, which jobs were available in the national economy.   R. 96-97.   If the hypothetical individual was off-task more than 25% of the time, the VE testified that there would be no jobs the individual could perform.   R. 99.

The ALJ acknowledged that if Henry were limited to sedentary work, he would be considered disabled under the Medical-Vocational Guidelines (the "Grids") as of Henry's 50th birthday in February 2010.   R. 97.   Based on the testimony of the VE at the first hearing, the ALJ concluded that Henry could perform work available in the national economy, specifically route clerk, collator operator and blade balancer.   R. 21.   Therefore, the ALJ concluded that Henry was not disabled.

## ANALYSIS.

Henry raises two inter-related assignments of error.   He contends that the ALJ erred in giving little weight to Dr. Barber's opinion.   He also asserts that the ALJ erred in assessing limitations arising from pain and other subjective symptoms, including his vision impairment.

The ALJ gave Dr. Barber's functional capacity assessment little weight because he found the opinion to be inconsistent with Henry's limited and conservative treatment, Henry's testimony that medication made his condition tolerable, Henry's ability to work for many years after he injured his back, and the ALJ's finding that Henry's statements about his limitations were not entirely credible.   R. 19.   Henry contends that the ALJ's reasoning is not supported by

substantial evidence in the record.   *See, e.g.*, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.

1995); *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742 (11th Cir. 2011).[2]

With respect to the ALJ's finding that Henry's treatment was limited, the record reflects

that Henry's treatment was limited due to lack of insurance and funds to pay for medical

treatment.   Under these circumstances, the ALJ should have addressed whether poverty, not lack

of medical necessity, was the cause of Henry's infrequent treatment.   *See Bulger v. Colvin*, Civil

Action No. 1:13-cv-127-CSC, 2014 WL 4495220, at *9 (M.D. Ala. Sept. 12, 2014).

With respect to the finding that Henry's treatment was conservative, the record reflects

that Dr. Lavoie indicated there were no viable surgical options.   Henry testified that the free

clinic where he obtained his most recent treatment did not prescribe certain medication.   The

record shows, however, that the free clinic did prescribe Tramadol, a narcotic-like medication

used to treat moderate to severe pain.   Use of strong pain medication is not consistent with the

finding that Henry's treatment was conservative.

The ALJ reliance on Henry's lack of credibility as a basis to support giving little weight to

Dr. Barber's functional capacity assessment is also not well founded.   Dr. Barber's opinion was

supported by findings on examination, not merely Henry's reported limitations.   Dr. Barber

confirmed Henry's complaints of pain through positive straight-leg raising tests and findings on

examination that Henry had paravertebral muscle spasms and tenderness in the sacroiliac joints.

Dr. Barber also observed that Henry had limitation in range of motion in the lumbar and cervical

spine.   Other examinations and testing also provided evidence of an underlying impairment likely

---

[2] Unpublished decisions of the United States Court of Appeals for the Eleventh Circuit are cited as persuasive authority.

NOT FOR PUBLICATION

to cause Henry's pain.   An MRI in July 2011 revealed multilevel degenerative disc disease with suspected impingement of the right L4 nerve root.   Treatment notes consistently showed spasms, tenderness and restricted range of motion.

The ALJ's reliance on Henry's ability to work after he injured his back also does not provide substantial evidence to support the decision to give Dr. Barber's opinion little weight. The ALJ found that Henry could not return to his previous work in light of his impairments, despite Henry's testimony that medication made his pain tolerable.

Finally, the Commissioner argues that the ALJ adequately considered limitations arising from Henry's vision problems by including in the RFC assessment an inability to perform fine detail work.   I note, however, that this limitation was not included in the hypothetical questions to the VEs at any of the hearings.   Therefore, the record is insufficient to determine whether there was work available in the national economy that Henry could perform in light of the inability to perform fine detail work because this limitation was not included in any of the hypothetical questions posed to the VEs.[3]

For these reasons, I recommend that the decision of the Commissioner be reversed. Henry asks that the Court remand the case for an award of benefits.   Remand for an award of benefits is appropriate only when "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   Because the Commissioner has not yet properly considered the evidence of record and the record is not complete at step five

---

[3] The record is also insufficient to support the ALJ's finding that Henry could perform the jobs of route clerk, collator operator and blade balancer because the hypothetical question the ALJ posed to the VE at the first hearing did not include the mental functional limitations that are part of the most recent RFC assessment.

NOT FOR PUBLICATION

of the sequential evaluation, it is not clear that Henry is disabled without doubt.   Therefore,

remand for further proceedings is appropriate.

**RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final

decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the

case be **REMANDED** for further proceedings consistent with the Court's order on this Report

and Recommendation.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue

a judgment consistent with its decision on this Report and Recommendation and, thereafter, to

close the file.

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved

party from attacking the factual findings on appeal.

**Respectfully Recommended** this 30th day of December 2014.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record

12
